# CARROLL,

## JANUARY TERM, A. D. 1849.

---

### HOBSON *et al. v.* ROLES.

A deed by a mortgagee not in possession conveys no interest to the grantee, unless the debt be assigned to him.

An acknowledgment in writing by the mortgagor, that he "surrenders the premises" mortgaged to the mortgagee, does not afford evidence of the subsequent possession of the latter, or that the party surrendering was in as his tenant. Nor does the act amount to a foreclosure.

TRESPASS, *quare clausum,* for breaking and entering a certain tract of land, being part of a five hundred acre lot, No. 2, situated in Ossipee, and cutting down the plaintiffs' mill-dam, and drawing off water therefrom, so as to prevent the plaintiffs from working their mills.

Plea, the general issue.

The plaintiffs claimed title to the premises, by virtue of an occupation of the same, and the erection of mills thereon as early as 1793, by John Dearborn, under a bond, as he said, for a deed of the same, from John Pierce, as the agent of John Fisher, who was said to hold the title of Mark Hunking Wentworth, the original proprietor of the lot. Soon afterwards John Dearborn gave a bond to convey the premises to James Dearborn, in exchange for land in Durham, and James Dearborn entered into possession of the same, and subsequently conveyed one undivided half to one Seth Fogg by deed, as said Fogg believes, executed at the time. Fogg con-

veyed to one Charles Babb in September, 1811, and Babb afterwards conveyed to Jacob Clark, who died seized in 1823.

The evidence as to the bonds and deed to Fogg was wholly in parol. The subsequent conveyances were by deed, duly executed and proved. The title of the other half of the premises remained in said James Dearborn until 1807, when it was attached by Samuel Wiggin, and was set off to said Wiggin in 1808. Samuel Wiggin conveyed to Joseph Wiggin, and Joseph Wiggin to said Jacob Clark. On the decease of Jacob Clark, his title passed by devise to his son Johnson Clark, who, in January, 1825, conveyed the same by deed to Joseph S. Mathes. In 1826 Mathes mortgaged the same to James Roberts; which mortgage was assigned to the Great Falls Manufacturing Company, who sued out a writ of possession, November 1, 1832, and subsequently recovered judgment and took possession thereon, foreclosed the mortgage, and afterwards, on the 2d of February, 1836, conveyed the premises by quitclaim deed to the plaintiffs.

The defendant claimed also under said Mathes, and showed a further title in him by a quitclaim deed from John Fisher to Mathes, executed in December, 1822, and a mortgage of the same date from Mathes to Mark W. Pierce. The said deed conveyed two certain tracts of land, described as follows, viz.: "being a part of the five hundred acre lot, number two, drawn to the original right of Mark Hunking Wentworth, Esq.; which five hundred acre lot was surveyed by Benjamin Cook, and a plan thereof made by him, dated the 9th day of November, 1808; and one of said pieces is numbered two on said plan, and contains eighty-seven acres and seven-eighths of an acre, be the same more or less; and the other of said pieces is numbered one on said plan, and contains ninety-six acres and one hundred and twenty-five rods, be the same more or less; and both said pieces are to be

taken according to said plan, and no otherwise, whether they contain more or less than above mentioned, or more or less than described on said plan."

This deed was objected to by the plaintiffs as referring to a plan for a description of the premises, when no plan was produced. Said deed was, however, admitted, evidence being offered that the plan was lost.

The mortgage from Mathes to Mark W. Pierce was assigned by said Pierce to Daniel R. Carter, on the 20th day of August, 1832, on the back of which assignment is an acknowledgment of surrender of the premises by Mathes to Carter, for condition broken of the mortgage, dated September 1, 1832. Said Carter in 1836 conveyed to one Isaac Thurston, and said Thurston the same year conveyed to the defendant.

The defendant offered evidence tending to show that the premises on which the trespass was alleged to have been committed were included in Cook's plan, referred to in the Fisher deed. This was, however, controverted by the plaintiffs, and this point was submitted to the jury. But whether the premises were included in Cook's plan or not, the plaintiffs contended that Fisher's deed was invalid, as, long previous to its execution, the individuals under whom the plaintiffs claimed had obtained a good and valid title as against Fisher, by virtue of adverse possession for more than twenty years. The defendant denied that, under the facts shown as to the original entry under a bond for a deed, the possession was adverse to the original. The court instructed the jury that this would depend upon the nature of the subsequent conveyances. If the design of the grantors was to convey a title by deed which was purchased and regarded as a good title, and the premises were, under such title, so held and claimed for more than twenty years, it would be competent evidence of adverse possession.

The defendant further contended, that after Mathes, in

1822, executed a mortgage deed of the premises to Mark W. Pierce, any subsequent title acquired by Mathes enured to the benefit of said Pierce and his assigns, and that therefore the title purchased by Mathes of Johnson Clark, in 1825, which was relied upon by the plaintiffs, operated solely for the benefit of the defendant, who claimed under Pierce's mortgage. The court, however, ruled that such a principle of law was applicable only to conveyances by deeds of warrantee, and that the deed from Mathes to Pierce, being a mere quitclaim deed, no subsequent purchase by Mathes would operate to sustain the title of his prior grantee.

The defendant farther objected, that the set-off, or levy of the execution, Samuel Wiggin against Edward Dearborn and James Dearborn, offered in evidence by the plaintiffs, was defective in this : that it does not appear by the officer's return that any of the appraisers were chosen by James Dearborn, whose property was levied upon, and also that it does not appear that the appraisers were reputable freeholders within the county of Strafford, where the property was located, and also that it does not appear that the said levy and execution was returned and recorded, as required by law.

The defendant also objected that the plaintiffs offered no sufficient evidence of a conveyance of the premises from the Great Falls Manufacturing Company to them.

A copy of the proceedings of the company was produced, by which it appeared that on the 22d day of July, 1840, the directors, by a resolution reciting the conveyance made by their agent, Kuhn, on the 2d day of February, 1836, to the plaintiffs, " voted to assent to, acknowledge, establish, ratify and confirm the said deed, and the estate conveyed thereby, to said Hobson and Dow, and their heirs and assigns ; also, the authority of said Kuhn to execute and deliver said deed, and his doings in the premises."

It also appeared that at a meeting of the company,

held on the 19th day of July, 1826, it was "voted that the directors be authorized to sell and lease such lots and portions of the real estate of the company as they may determine to be expedient; and that they be authorized to appoint a committee, or agent, to execute any deed of conveyance or lease for that purpose."

It did not appear, upon examination of the records of the company, that Kuhn was appointed an agent for executing the deed to Hobson and Dow.

A verdict was returned for the plaintiffs, which the defendant moved to set aside, and for a new trial.

*Bell*, for the defendant.

The deed of September, 1811, from Fogg to Babb, is the first event that would give any appearance of adverse occupation on the part of any one under whom the plaintiffs claim. The defendant has shown title under the original proprietors, which is not overcome by the plaintiffs' adverse occupation, or the adverse occupation of those under whom they claim. The presumption with respect to possession is, that it is not adverse until there is evidence that such is its character.

A tenant, and one who enters land under a contract to purchase, cannot acquire a title by length of time, without performing some act in the nature of a disclaimer of his relation as tenant or purchaser. *Jackson* v. *Miller*, 6 Wend. 228; *Sayles* v. *Smith*, 12 Wend. 57. This applies to the title set up under John and James Dearborn. Since Fogg never had a deed, his possession cannot be considered as adverse to the title of Fisher.

Charles Babb took a deed in September, 1811, and conveyed to Clark in 1823. The deeds from the Wiggins are not acknowledged and recorded, and possession under them was not with color.

Joseph S. Mathes, and those who claim under him, cannot set up a title derived by him from Johnson and

Jacob Clark, since such title enures to the benefit of Pierce and his grantees, to whom Mathes had conveyed in mortgage. 2 Hale's Ab. 401. Estoppel passes the title, and subsequent purchasers are bound by the estoppel, though the deed contained no covenant of warranty. *Goodtitle* v. *Morse*, 3 T. R. 365.

*Kimball* v. *Blaisdell*, 5 N. H. 533, is inconsistent with the doctrine of the court, that a title subsequently acquired by a grantor does not enure to the benefit of the purchaser, unless the grant be accompanied with covenants of general warranty.

There was no conveyance executed by the Great Falls Manufacturing Company. The plaintiffs derived their title from the deed. The rule as to the confirmation of the acts of an agent does not extend to confirm a deed which the agent has made without any authority originally given. Story on Agency 241, 242, 244; 2 Hill. Abr. 282. No confirmation obtained by a party after the commencement of an action can avail him in that action. 13 Mass. 472. When the act of an agent, in like circumstances to the present, is confirmed, the confirmation should be under seal, and should be of the act itself. A confirmation of the agent's authority is not sufficient. There should be a new grant.

It is not necessary to distinguish between the two halves of the estate as to the title. The plaintiffs derive their whole estate from Dearborns, under the bond. The two halves are united in Jacob Clark. He died, and his heir conveyed to Mathes. The possession of Mathes is not adverse to that of Pierce, which we claim. In 1822 Mathes mortgaged to Pierce, and in 1825 bought the claim of Clark, which the plaintiffs claim.

In 1825 Mathes was in possession under a title from Pierce. The possessory title which he obtained then became merged in Pierce's title, so that he cannot hold adversely to Pierce. His holding was under Pierce. His

taking of another deed was no evidence of the commencement of an adverse occupancy. It was consistent with the possession under Pierce. So the adverse occupancy was interrupted from the time that the conveyance was made to Mathes, till he conveyed by mortgage to the Great Falls Manufacturing Company.

We still rely on the objection to the levy of the execution against James and Edward Dearborn. The notice was to Edward, who had no interest in the land. Where the separate land of one of the judgment debtors is set off, the notice must be given to him.

*Hobbs*, for the plaintiffs.

1. The persons under whom the plaintiffs claim had gained a title to the mill and privilege by adverse possession before the conveyance by Fisher to Mathes. Their possession had been actual, permanent and exclusive, and they had made valuable improvements. *Lund* v. *Parker et al.*, 3 N. H. 49 ; *Waldron* v. *Tuttle*, 4 N. H. 37 ; *Riley* v. *Jameson*, 3 N. H. 23 ; *Hale* v. *Glidden*, 10 N. H. 397 ; *Little* v. *Libbey*, 2 Greenl. 242 ; *Smith* v. *Hosmer*, 7 N. H. 457 ; *Brown* v. *King* and *King* v. *Brown*, 5 Met. 173 ; *Rickard* v. *Rickard*, 13 Pick. 251 ; *Rehoboth* v. *Carpenter*, 23 Pick. 131.

In *Frembois* v. *Jackson*, 8 Cowen 589, the court say : " The actual possession and occupation of the premises, as owners are accustomed to possess and improve their estate, without payment of rent or recognition of title in another, or disavowal of title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner ; and, unless rebutted by other evidence, will establish the fact of a claim of title." The disseizin may be without the owner's knowledge. *Poignard* v. *Smith*, 6 Pick. 172. The claim being adverse, and continued more than twenty years, Fisher, in December, 1822, could make no entry into the mill and privilege, or claim or title thereto.

*Willard* v. *Twitchell,* 1 N. H. 177; N. H. L. 74. *Haddock* v. *Wilmarth,* 5 N. H. 181. "The bar arising from the statute of limitations, after adverse possession of incorporeal hereditaments for sixty years, is said to confer a title by prescription; not that a positive right or title is acquired, but the remedy of him who had the right is forever gone. This sort of prescription is, therefore, not improperly called a negative prescription." Blanchard on the Statute of Limitations, 44, 45; Law Lib. 1–24; Greenl. on Ev. 20, 21. In *Sayles* v. *Smith,* 12 Wend. 57, the defendant's grantor had by parol acknowledged the title to be in the plaintiff's grantor. In *Jackson* v. *Miller,* 6 Wend. 228, Hall, one of the plaintiff's lessors, entered, under authority from the defendant, and admitted the lot belonged to him. The whole question in the case at bar was properly submitted to the jury, and they found the entry and possession adverse. *Atherton* v. *Johnson,* 2 N. H. 31; *Wendell* v. *Blanchard et al.,* 2 N. H. 456; 5 Met. 173, *supra; Kinsley et al.* v. *Daggett et al.,* 11 Mason 301. It is a title *en pais.*

2. The bond was not conditioned to convey land when paid for, but to procure a deed of land already paid for, and such bond is consistent with the claim of adverse possession. The case finds that the land was paid for by the exchange. See 5 Met. 173, *supra.* In *Fox et al.* v. *Widgery,* 4 Greenl. 214, the court say: "If the disseizor takes from the disseizee a naked release of all his interest in the land, no relations arise between them by which one is placed in subordination to the other, and the disseizin is not thereby purged." *Barker* v. *Salmon,* 2 Met. 32.

3. Mathes, and those claiming under him, are not estopped to deny that the premises passed by the deed of Fisher to Mathes, nor to set up a title by disseizin. *Somes* v. *Skinner,* 16 Mass. 356; *Parker* v. *Locks and Canals,* 3 Met. 91; *Ham* v. *Ham,* 14 Maine 351; *Melvin* v. *Locks and Canals,* 5 Met. 15; Greenl. Ev. 31, (2d ed.) 27, note 1; *Goddar's Case,* 2 Coke 4.

4. The deed from Fisher to Mathes, and the deed in fee and mortgage, Mathes to Pierce, are but one transaction, and parts of the same conveyance; and Mathes, and those claiming under him, are not estopped by the covenant in the deed, Mathes to Pierce, to deny that anything in the premises passed by that deed; for the case finds that only the same premises were conveyed to Pierce by Mathes which Fisher conveyed to him. See *Comstock et al.* v. *Smith,* 13 Pick. 116; *Ellis* v. *Welch,* 6 Mass. 250; *Allen* v. *Sayward,* 5 Greenl. 227; 4 Kent's Com. 98, 99, (5th ed.); Gr. Ev. 29, (1st ed.) The case of *Kimball* v. *Blaisdell,* 5 N. H. 533, was a clear case of *resulting* trust, and not of estoppel, and distinguishable from the case at bar. In the cases of *Baxter* v. *Bradbury,* 20 Maine 260; *Terrell* v. *Taylor,* 9 Cranch 43, the deeds contained covenants of general warranty. In the cases of *Jackson* v. *Stevens,* 13 Johns. 316; *Fairbanks et al.* v. *Williamson,* 7 Greenl. 96, and several other cases, the grantor had nothing in the premises at the time of the conveyance. The distinction is between cases where the grantor has nothing in the premises at the time of the conveyance, and where he supposes that he has some title, though defeasible. In 2 Hilliard's Abr. 401, a distinction is taken between one who comes in in the post, and the transfer of a pretended title. In the case of *Goodtitle* v. *Morse,* 3 T. R. 365, if the heir apparent had made a feoffment in fee, with covenants of general warranty, *probably* his heir would have been bound by way of estoppel.

5. There is a sufficient conveyance from the Great Falls Manufacturing Company to the plaintiffs. The deed has been ratified and confirmed by the votes of the company and directors. *Burrell* v. *Bank,* 2 Met. 163; 2 Hilliard's Abr. 315, art. 74; Story Ag. 53, 54, (note 3) 240, 246; 4 Dane's Dig. 148, ch. 110, sec. 4; 4 Cruise 136; *Coburn* v. *Ellingwood,* 4 N. H. 99; *Bailey* v. *March,* 3 N. H. 274; Ang. & A. on Corp. 158–246. In *Blood* v. *Goodrich et als.,*

9 Wend. 68, C. J. *Savage* says : "I should be unwilling to say that a subsequent written acknowledgment of a deed would not be proper evidence to submit to a jury." In *Millikin et als.* v. *Coombs et als.*, 1 Greenl. 343, it is decided, that if an attorney whose authority is by parol execute a bond in the name of his principal, and afterwards he be regularly constituted by letter of attorney, bearing date prior to the bond, this is a sufficient ratification, and gives validity to the bond. The distinction is believed to be between a deed void and a deed voidable merely. The latter may be ratified.

6. If but one of the debtors be seized, an appointment by him of an appraiser is sufficient. An appointment by the other debtor would not be good, and the owner may claim the land. Yet in such case the levy would be good against one who should not derive his title from him who was seized. *Herring et al.* v. *Polley*, 8 Mass. 113. If the defendant claims the benefit of the conveyance from Clark to Mathes, he must ratify the levy. The statute did not require the levy to be recorded in the office of the registry of deeds.

7. As the defendant does not claim under the company, and shows no title, he has no right to call in question the regularity of the proceedings of the company, or of the levy. *Thompson* v. *Carr*, 5 N. H. 511.

GILCHRIST, C. J. This is an action of trespass for breaking the plaintiffs' close, and cutting away their mill-dam, and doing other injuries. The plaintiffs' evidence clearly shows that they were in possession of the premises, and that the defendant cut down the dam. Their possession entitles them to sustain their action, unless the defendant can justify his act by showing that he had a title to the premises. What title does he show?

Fisher, who was said to hold under Wentworth, the original proprietor, in December, 1822, released his right to Mathes. Mathes on the same day mortgaged the

Hobson *v.* Roles.

premises to Pierce, and Pierce afterwards assigned his mortgage to Carter.

On the back of the assignment is entered an acknowledgment by Mathes, of the surrender of the premises to Carter, for condition broken. This bears date the 1st of September, 1832. In 1836 Carter conveyed to Thurston, and the same year Thurston conveyed to the defendant.

Carter, at the time he conveyed to Thurston, was a mortgagee, having taken the mortgage which had been made by Mathes to Pierce, by the assignment executed by the latter. There is no evidence of a foreclosure; there is no evidence of his having taken possession of the mortgaged premises. Mathes, on the 1st day of September, 1832, by writing, upon the deed of assignment, acknowledged that he had surrendered the premises to Carter for breach of the condition in the mortgage; but Carter made no entry. The acknowledgment of a surrender of the premises by Mathes is not equivalent to an entry by Carter. It is no evidence that Mathes held from that time as the tenant of Carter, even if there were evidence that Mathes was in possession at the time.

In the conveyance from Carter to Thurston the debt was not assigned, and the deed consequently passed nothing. *Taylor* v. *Dearborn*, decided in Rockingham in July, 1846; *Smith* v. *Smith*, 15 N. H. 55; *Ellison* v. *Daniels*, 11 N. H. 274; *Bell* v. *Morse*, 6 N. H. 205.

It would have been otherwise if there had been an entry by Carter under his mortgage; for we have held that a mortgagee in possession may, by his deed in common form, pass the land without also assigning the debt, so far as to give his grantee a right to occupy, and to defend his possession against all who do not exhibit a better title.

This renders it unnecessary to consider a number of questions presented in the case, that are important in themselves, and have been discussed in argument. The result is, there must be

*Judgment on the verdict.*